UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

INVENTORY GENERATION INC., EARL DAVID,

Plaintiffs,

-v-

PROVENTURE CAPITAL FUNDING LLC, BENJAMIN
ARYEH, *et al.*

Defendants.

22 Civ. 10529 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Inventory Generation Inc. and Earl David (collectively, "Inventory

Generation") bring this putative class action against Proventure Capital Funding LLC ("PCF"),

Benjamin Aryeh, Silverline Services Inc., Shmuel Brummel, Wynwood Capital Group LLC,

Zalmen Teitelbaum, Sam Gross, Globex Funding LLC, Jack Brown, MCA Receivables LLC

d/b/a United Fund USA ("MCA Receivables"), and Yisroel C. Getter.[1]  The Complaint, Dkt. 1

("Compl."), alleges, as to all defendants, violations of the Racketeer Influenced and Corrupt

Organizations ("RICO") Act, 18 U.S.C. § 1962(c), conspiracies to commit the same, under 18

U.S.C. §1962(d), and fraud and breach of contract claims relating to a series of five merchant

cash advance ("MCA") agreements.  It seeks a declaratory judgment that all five MCA

agreements are void as a matter of law.  The Complaint also brings claims under 42 U.S.C.

§ 1983 against defendants Wynwood, Gross, Teitelbaum, MCA Receivables, and Getter.

Inventory Generation sues on behalf of all persons in the United States who, after

December 13, 2018, paid money to "a member of the Enterprise pursuant to an MCA Agreement

---

[1] Plaintiffs have since voluntarily dismissed defendants Silverline Services Inc., Brummel,
Wynwood Capital Group LLC, Teitelbaum, Gross, Globex Funding, and Brown.  Dkts. 30–33.

with an effective interest rate exceeding twenty-five percent," Compl. ¶ 146, or who "had their bank account frozen as a result of a writ of attachment issued by [d]efendants under the color of Connecticut law," *id.* ¶ 147.[2]

Defendants PCF and Benjamin Aryeh (the "PCF defendants") move to stay the action as to Inventory Generation's claims against them and compel arbitration of the same under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2.  The PCF defendants also seek fees and costs associated with moving to compel.  For the foregoing reasons, the Court grants the motion to compel arbitration, but denies the request for attorneys' fees and costs.

## I.      Background

### A.      Factual Background[3]

The following summary is limited to the facts necessary to resolve the PCF defendants' motion to compel arbitration.

---

[2] The Class does not include (1) any judge or magistrate presiding over the action or members of their families; (2) defendants, defendants' subsidiaries, parents, successors, predecessors, and any entity in which the defendants or their parents have a controlling interest and its current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in such a matter have been finally adjudicated on the merits or otherwise released or waived; (5) plaintiffs' and defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Compl. ¶ 147.

[3] The summary is drawn from (1) the Complaint; (2) the PCF defendants' memoranda of law, Dkts. 28 ("Mem."), 35 ("Reply"), declaration, Dkt. 27 ("Aryeh Decl."), and attached exhibits in support of their motion to compel arbitration; and (3) Inventory Generation's opposition to that motion, Dkt. 34 ("Opp.").  In the context of motions to compel arbitration under the FAA, the court applies a standard similar to that applicable for a motion for summary judgment, and therefore considers materials outside the Complaint.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (considering, in resolving a motion to compel arbitration, "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . the affidavits"); *Ventoso v. Shihara*, No. 19 Civ. 3589 (PAE), 2019 WL 9045083, at *1 n.2 (S.D.N.Y. June 26, 2019) (same).

1.     **The Cash Advance**

Inventory Generation is a common carrier that transports goods for freight brokers and shippers.  Compl. ¶¶ 71–72.  As part of its business model, it pays independent truckers to make deliveries on its behalf across the United States.  *Id.* ¶ 73.  During the COVID-19 pandemic, and as a direct result of it, Inventory Generation struggled to meet its expenses and pay its drivers. *Id.* ¶¶ 74, 76.  Ultimately, to pay the drivers essential to its business, Inventory Generation entered into an MCA agreement with since-dismissed defendant Silverline Services Inc.  *Id.* ¶ 79.  MCA agreements provide cash advances on a merchant's future receipts, to be repaid with interest.  *See generally id.* ¶¶ 79–128.  "[D]ue to the unlawful and unconscionable interest rates charged by the MCA companies" broadly, and the Silverline Services agreement specifically, Inventory Generation became "trapped in a never-ending spiral of debt," in which it was "forced to enter a series of MCA loans to pay off the prior ones."  *Id.* ¶ 78.

PCF is a Brooklyn-based merchant cash advance company and domestic limited liability company, *id.* ¶ 25, of which Aryeh is a member, Aryeh Decl. ¶ 1.  On October 25, 2022, Inventory Generation entered into an MCA agreement (the "Agreement"), *id.*, Ex. B, with PCF. *See* Comp. ¶ 100; Aryeh Decl. ¶ 6.  This was Inventory Generation's third MCA agreement. Compl. ¶ 100.  The Agreement gave Inventory Generation an advance of $15,000 in exchange for the purported purchase of all its future receipts, until $22,485 was repaid.  *Id.* ¶ 101; *see also* Agreement at 1.  Under the Agreement, Inventory Generation repaid the advance through daily automatic clearing house ("ACH") payments in the amount of $562.12, over the course of 40 days, for a total of $22,485.  Compl. ¶ 102.  The PCF defendants deducted an "Origination Fee" of 10% of the $15,000 to "cover the cost of origination and ACH set up," *id.* ¶ 105, such that Inventory Generation received an actual cash advance of $13,500 only, *id.* ¶ 107.

PCF's broker also promised Inventory Generation an additional $50,000 in funding and a lower interest rate after 10 payments. *Id.* ¶ 108.

### 2. Inventory Generation Defaults

Inventory Generation could not afford to pay the MCA agreements' "crippling daily payments." *Id.* ¶ 129. On November 12, 2022, it stopped all ACH payments from its bank account. *Id.* Soon thereafter, defendants—including Aryeh—began threatening Earl David. *Id.* ¶ 130. On or about December 6, 2022, Aryeh texted David that he was a "motherfucker," that Aryeh would "come after [David] personally," and that David had "no idea what [Aryeh] was going to do." *Id.* ¶ 131. Inventory Generation alleges that defendants—without distinguishing among them—continued to send threatening messages to David on a daily basis. *Id.* ¶ 132.

On December 9, 2022, David discovered that Inventory Generation had no money in its bank account. *Id.* ¶ 133. Defendant MCA Receivables had issued a levy on his account for $29,924. *Id.* ¶ 134. "Scared of the harassment and threats he was receiving," David used a line of credit to borrow more money to pay off, *inter alia*, the PCF defendants. *Id.* ¶ 140. As of the filing of the Complaint on December 13, 2022, Inventory Generation had repaid PCF defendants $20,600. *Id.* ¶ 16.

### 3. The Illegal Features of the Agreement

Inventory Generation alleges that several features of the Agreement with the PCF defendants, and general practices of the MCA industry broadly, are illegal. It alleges that the fixed daily payment provision of the Agreement—although "disguised as a good-faith estimate equal to 25% of Inventory [Generation's] daily revenues"—"did not remotely reflect" its daily revenue, *id.* ¶ 103, and effectively represented an "annual interest rate of more than 450% per annum or 18 times the maximum 25% rate permitted under New York Penal Law," *id.* ¶ 102; *see also id.* ¶ 110 (interest rate "unconscionable"). It also alleges that, "as a result of the sham

[Origination] fee[],” PCF never advanced Inventory Generation the full $15,000, *id.* ¶¶ 19, 105[4],

107, and that, contrary to its broker’s promises, *see id.* ¶ 108, the PCF defendants never provided

additional funding or charged a lower interest rate, *id.* ¶ 109.

Inventory Generation alleges that all five MCA agreements were unconscionable, *id.*

¶¶ 61–69, including because they “contain numerous knowingly false statements,” *id.* ¶ 64, made

“in order to induce” Inventory Generation into entering the agreements, *id.* ¶ 221, were

“designed to fail” and “result in a default” by the Merchant, *id.* ¶ 65, and violated New York

public policy, *id.* ¶ 66.  It also alleges that the MCA industry, broadly, engages in illegal and

predatory lending practices, *see, e.g.*, *id.* ¶¶ 43–44, in contravention of New York laws

prohibiting predatory lending rates, *see, e.g.*, *id.* ¶ 45.

### 4.    The Arbitration and Forum Selection Provisions

Several provisions of the Agreement are germane to the PCF defendants’ motion to

compel arbitration.  The Agreement is divided into two sections: (1) a terms-and-conditions

section which details the terms of the agreement between Inventory Generation and PCF,

Agreement at 2–11, and (2) a guarantee section wherein Earl David personally guaranteed

Inventory Generation’s performance, *see id.* at 12–15.  These sections contain nearly identical

arbitration and forum selection provisions.

The terms-and-conditions portion of the Agreement includes an arbitration provision that

reads:

> Any action or dispute relating to this Agreement or involving PCF on one side and
> any Merchant or any Guarantor on the other, including, but not limited to issues of

---

[4] Paragraph 105 of the Complaint appears to include a typo.  It uses “purchased amount”—
which, as defined, would reference the $22,485—instead of “purchase price”—which, as
defined, would reference the $15,000.  *See* Compl. ¶ 105.  However, the Agreement and the
balance of the allegations as to the PCF defendants clarify that the 10% fee applied to the
$15,000, not the $22,485.  Agreement at 1; *see, e.g.*, Compl. ¶¶ 19, 107 (Inventory Generation
only had $13,500 due to fees).

arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration before a single arbitrator. The arbitration will be administered by Arbitration Services, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.arbitrationservicesinc.com, or by Mediation & Commercial Arbitration, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.mcarbitration.org . . . . Accordingly, notwithstanding any provision in this Agreement to the contrary, all matters of arbitration relating to this Agreement will be governed by and construed in accordance with the provisions of the Federal Arbitration Act, codified as Title 9 of the United States Code, however any application for injunctive relief in aid of arbitration or to confirm an arbitration award may be made under Article 75 of the New York Civil Practice Law and Rules. The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of [PCF].[5]

*Id.* ¶ 48. The guarantee portion of the Agreement contains a substantively identical provision (together with terms-and-conditions arbitration provision, the "arbitration provisions"), and differs only in that it uses "this Agreement or this Guarantee" in place of "this Agreement." *Id.* ¶ G15.

The terms-and-conditions portion of the Agreement also contains forum and venue selection provisions. It provides:

Forum and Venue Selection. Any litigation relating to this Agreement or involving PCF on one side and any Merchant or any Guarantor on the other must be commenced and maintained in any court located in the Counties of Nassau, New York, or Sullivan in the State of New York (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Agreement encompasses the transaction of business within the City of New York and that the Civil Court of the City of New York ("Civil Court") will have jurisdiction over any litigation relating to this Agreement that is within the jurisdictional limit of the Civil Court. In addition to the Acceptable Forums, any

---

[5] The Agreement appears to be a standard document with a series of blanks, into which the parties inserted their names and the agreed-upon dollar values. As docketed, the final word of this clause appears as a blank. However, based on context—that is, the naming of PCF elsewhere as the lender—the Court assumes, *arguendo*, that the final word should be "PCF." *See also* Mem. at 3 (using "PCF").

> action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to PCF may be commenced and maintained in any other court of competent jurisdiction.

*Id.* ¶ 40.  Here, too, the guarantee portion contains a substantively identical provision, (together with the terms-and-conditions forum selection provision, the "forum selection provisions"), and differs only in that it uses "this Agreement or this Guarantee" in place of "this Agreement."  *Id.* ¶ G7.

The terms-and-conditions and guarantee sections of the Agreement likewise contain similar language distinguishing between "litigation or arbitration."  *See, e.g.*, *id.* ¶¶ 46 (apportionment of attorneys' fees "[i]f PCF prevails in any litigation or arbitration with any Merchant or any Guarantor"), G13 (same), G9 (Merchants or guarantors not permitted to interpose counterclaims "[i]n any litigation or arbitration commenced by PCF").

### B.     Procedural History

On December 13, 2022, Inventory Generation filed the Complaint, Dkt. 1, and an emergency motion for a temporary restraining order as to MCA Receivables and Getter (collectively, the "MCA defendants"), Dkt. 5.  On December 14, 2022, the Court ordered MCA Receivables and Getter (together, the "MCA Receivables defendants") to show cause why the Court should not issue the requested emergency relief.  Dkt. 7.  On or by December 16, 2022, Inventory Generation served or attempted service at the addresses registered with the Division of Corporations as to all defendants.  Dkt. 9.  It was unsuccessful in serving the PCF defendants. *Id.*  On December 20, 2022, the Court held a hearing, at which no defendants appeared.  On December 20 and 21, 2022, respectively, Inventory Generation successfully served Aryeh and PCF.  Dkt. 12.

On December 21, 2022, the Court issued the temporary restraining order, enjoining the MCA Receivables defendants from levying against Inventory Generation's bank accounts, and

ordered the MCA Receivables defendants to show cause why a preliminary injunction was not warranted. Dkt. 11. Inventory Generation served the MCA Receivables defendants. Dkts. 15–16. On January 3, 2023, the Court held the show cause hearing. The MCA Receivables defendants did not appear. The same day, the Court converted the temporary restraining order into a preliminary injunction. Dkt. 23.

On January 7, 2023, the PCF defendants moved to stay the action and compel arbitration as to Inventory Generation's claims against them, Dkt. 26 (the "motion"), and filed a memorandum of law, and the Aryeh declaration, in support. On January 30, 2023, Inventory Generation opposed the motion. On February 1, 2023, the PCF defendants replied.[6]

On March 21, 2023, Inventory Generation represented to the Court that it had settled all claims against the MCA Receivables defendants and intended to dismiss voluntarily its allegations against the same, such that the PCF defendants would be the only remaining defendants in this action. *See* Dkt. 42-1.

## II.     The PCF Defendants' Motion to Compel Arbitration

The FAA provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Before an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017).

---

[6] On January 17 and 24, 2023, respectively, Inventory Generation gave notice of its voluntary dismissal of defendants Silverline Services, Inc., Shmuel Brummel, Globex Funding LLC., and Jack Brown, Dkt. 30, and defendants Wynwood Capital Group LLC, Zalmen Teitelbaum, and Sam Gross, Dkt. 32. On January 18 and 25, 2023, respectively, the Court granted the voluntary dismissals. Dkts. 31, 33.

On their face, the arbitration provisions here are binding and broad, authorizing arbitration at the election of any party with respect to "[a]ny action or dispute relating to this Agreement or involving PCF on one side and any Merchant or any Guarantor on the other[]." Agreement ¶ 48; *see id.* ¶ 15 (same). It is undisputed that Earl David, as Inventory Generation's owner, signed each page of the 19-page Agreement, including the pages containing the arbitration provisions. And Inventory Generation does not challenge the elements of a binding contract. It does not, for example, dispute that there was a meeting of the minds and mutual consideration. And any such argument would fail. *See Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (where contract was objectively clear as to parties' respective obligations and had been duly executed, argument disputing a meeting of the minds, and contract formation, based on assertion that counterparty had subjectively not intended to perform, was "meritless").

Instead, the parties' briefs raise two issues. The first is whether the nature of Inventory Generation's attacks on the Agreement as usurious bear on the forum in which these are to be resolved. The PCF defendants argue that because Inventory Generation challenges the validity of the contract as a whole, this challenge, under *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), is properly resolved in arbitration. Mem. at 2–3. Inventory Generation does not respond to this argument. However, it makes a separate argument why arbitration is unavailable. The Agreement, it contends, contains contradictory arbitration and forum selection clauses, and thus does not reflect unambiguous consent to arbitration. Opp. at 2–4. The PCF defendants dispute this point. Reply at 1–4. The Court takes up these issues in turn.[7]

---

[7] Inventory Generation separately argues that the PCF defendants waived any right to arbitrate because the forum selection provisions state that the parties "waive any and all objections to the

### A.    Fraudulent Inducement and Unconscionability

"Challenges to the validity of arbitration agreements upon such grounds as exist at law or in equity for the revocation of any contract can be divided into two types." *Buckeye*, 546 U.S. at 444 (internal quotation marks omitted). "One type challenges specifically the validity of the agreement to arbitrate." *Id.* "The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.*; *see Ipcon*, 698 F.3d at 61 ("[C]hallenges to a contract containing an arbitration clause fall into two categories: those that challenge the contract as a whole, and those that challenge the arbitration clause in particular." (quoting *Buckeye*, 546 U.S. at 444)). Challenges to the contract's validity are considered by the arbitrator in the first instance, "unless the challenge is to the arbitration clause itself." *Buckeye*, 546 U.S. at 445–46. That is because, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract," *id.* at 445, and courts may therefore enforce arbitration agreements, even where an arbitrator later finds the contract void, *id.* at 448.

---

jurisdiction or venue of the Acceptable forums," and that such waiver is a question for this Court to decide in the first instance. *See* Opp. at 5–6. That argument is unpersuasive—and contrary to Second Circuit authority. *See Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 283–84 (2d Cir. 2005) (rejecting argument that, because it "admitt[ed] the possibility of litigation in court," a forum selection clause "constitutes a waiver of the agreement to arbitrate"), *abrogated on other grounds, Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010). The two cases that Inventory Generation cites in support are also inapposite. The first contradicts its stance that waiver is to be decided by a court, not an arbitrator. *See 21st Century N. Am. Ins. Co. v. Douglas*, 105 A.D.3d 463, 463 (2013) ("Questions as to whether . . . the conditions precedent to arbitration have been waived . . . are for the arbitrator to decide."). The second involves waiver through defendants' pursuit of litigation—not by virtue of an agreement's text. *See Morgan v. Sundance*, 142 S. Ct. 1708, 1714 (2022) (considering whether, in pursuing litigation before invoking contractual right to arbitrate, defendants had "knowingly relinquishe[d] the right to arbitrate by acting inconsistently with the right"); *see also Flores v. Nat'l Football League*, No. 22 Civ. 0871 (VEC), 2023 WL 2301575, at *8 (S.D.N.Y. Mar. 1, 2023) (in evaluating waiver of right to arbitrate by litigation, "focus must be on the defendants' conduct").

Inventory Generation's challenge to the Agreement here is to its validity as a whole, including its arbitration provision(s).  It argues that all five MCA agreements—including the Agreement between Inventory Generation and the PCF defendants—are "void," Compl. ¶ 195, because they charged criminally usurious interest rates, *id.* ¶ 141, and were fraudulently induced, *id.* ¶ 221, substantively and procedurally unconscionable, *id.* ¶¶ 61–69, in violation of New York, *id.* ¶ 102, and federal law, *see, e.g., id.* ¶¶ 153–97 (RICO), 198–207 (conspiracy to violate RICO).  Its Complaint alleges that all defendants made "knowingly false statements" regarding the nature of the transactions, *id.* ¶ 64, and "false representations . . . in order to induce [p]laintiffs into believing that the fees charged . . . were legitimate" when, in fact, they were disguised illegal interest rates, *id.* ¶ 221.  It makes similar allegations as to the PCF defendants specifically.  *See id.* ¶¶ 100–10 (Agreement usurious), 104 (a "sham"), 106–07 (contained "sham fees" that were, "in reality, . . . merely additional disguised interest").  Inventory Generation's requested relief likewise is premised on the Agreement's wholesale invalidity.  It seeks, *inter alia*, a declaratory judgment that all the MCA agreements "are void as a matter of law," *id.* ¶ 209, or "void *ab initio*," *id.* ¶ 211, "because each intended to charge and receive a criminally usurious interest rate[]," *id.* at 43–44.

Given the nature of Inventory Generation's challenges to the Agreement as criminally usurious, fraudulently induced, unconscionable, and illegal, these challenges are, therefore, properly evaluated in the first instance by an arbitrator.  *See Buckeye*, 546 U.S. at 444 ("Respondents' claim is of th[e] second type.  The crux of the complaint is that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge.").  Where parties "challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract," and "[t]he challenge should

therefore be considered by an arbitrator, not a court." *Id.* at 446; *see, e.g.*, *Ipcon*, 698 F.3d at 62

(evaluating complaint's allegations); *HDI Glob. SE v. Lexington Ins. Co.*, 232 F. Supp. 3d 595,

602–03 (S.D.N.Y. 2017) (evaluating whether "gravamen" of complaint challenged validity of

contract).

      For this reason, courts in this District have compelled arbitration in similar cases where a

complaint challenged a merchant cash advance agreement's validity. *See, e.g.*, *PrecisionWorks*

*MFG, LLC v. Union Funding Source, Inc.*, No. 22 Civ. 8290 (LGS), 2022 WL 16857360, at *2

(S.D.N.Y. Oct. 25, 2022) (compelling arbitration of claim that merchant cash advance agreement

was void as unconscionable); *cf. Haymount Urgent Care PC v. GoFund Advance, LLC*, No. 22

Civ. 1245 (JSR), 2022 WL 6994507, at *5–6 (S.D.N.Y. Oct. 12, 2022) ("Reserving for the

arbitrator the initial determination as to whether an allegedly void agreement is in fact void

makes sense, because the whole point of the arbitration provision is to decide in which forum

claims should be made and arguments decided.  Allowing such a claim to proceed in court would

therefore frustrate the arbitration agreement.").  They have likewise compelled arbitration where

similar challenges were made to other species of contracts. *See, e.g.*, *Dixon v. Wells Fargo*

*Bank, N.A.*, No. 21 Civ. 10 (JPC), 2021 WL 4805429, at *3–5 (S.D.N.Y. Oct. 14, 2021)

(compelling arbitration because "any unresolved disagreement" encompassed fraud, fraudulent

inducement, and unconscionability challenges); *Catz v. Precision Glob. Consulting*, No. 19 Civ.

7499 (ER), 2021 WL 1600097, at *8 (S.D.N.Y. Apr. 23, 2021) (compelling arbitration of

fraudulent inducement claims where allegations went to enforceability of contract as a whole, not

enforceability of arbitration clause in particular); *Morelli v. Alters*, No. 19 Civ. 10707 (GHW),

2020 WL 1285513, at *8, *11 (S.D.N.Y. Mar. 18, 2020) (agreement to arbitrate "any dispute"

"plainly covers . . . fraudulent inducement and declaratory judgment claims"); *see also ACE Cap.*

*Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002) ("It is well settled

that a claim or defense of fraudulent inducement, when it challenges generally the enforceability

of a contract containing an arbitration clause rather than specifically the arbitration clause itself,

may be subject to arbitration.").

Accordingly, insofar as Inventory Generation challenges the validity of the Agreement,

those challenges are properly resolved by the arbitrator in the first instance.[8]

### B.    Inventory Generation's Assent to the Arbitration Provisions

To the extent that Inventory Generation challenges the validity of the arbitration

provisions specifically, this argument is properly resolved by the Court.  *See Ipcon*, 698 F.3d at

61 ("If the challenge is to 'the arbitration clause itself—an issue which goes to the making of the

agreement to arbitrate—the federal court may proceed to adjudicate it.'" (quoting *Buckeye*, 546

U.S. at 445)); *see, e.g.*, *McDaniel v. Home Box Off., Inc.*, No. 22 Civ. 1942 (VEC), 2023 WL

1069849, at *2–3 (S.D.N.Y. Jan. 27, 2023) (compelling arbitration as to argument regarding

---

[8] It is likewise for the arbitrator, if she or he upholds the Agreement over the challenges brought
by Inventory Generation, to resolve whether Inventory Generation's claims fall within the scope
of the arbitration provisions.  Under the Agreement, that issue is for the arbitrator to resolve.  *See*
Agreement ¶¶ 48, G15; *VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities
Partners II L.P.*, 717 F.3d 322, 325 n. 2 (2d Cir. 2013) ("'[Q]uestions of arbitrability' is a term
of art covering disputes about . . . whether an arbitration clause in a concededly binding contract
applies to a particular type of controversy" and "should be decided by the court *unless* there is
clear and unmistakable evidence from the arbitration agreement that the parties intended that
they be decided by the arbitrator" (internal quotation marks omitted) (emphasis added)).
Although not resolving that question, the Court notes that courts in this Circuit have held claims
such as those here within the scope of arbitration agreements providing for the arbitration of
"any dispute."  *See, e.g.*, *ACE Cap. Re Overseas Ltd.*, 307 F.3d at 30 (reversing and remanding
with instructions to compel arbitration because "any dispute" language encompassed fraudulent
inducement); *Dixon*, 2021 WL 4805429, at *3–5 (compelling arbitration because "any
unresolved disagreement" encompassed fraud, fraudulent inducement, and unconscionability
challenges); *Morelli*, 2020 WL 1285513, at *8, *11 (agreement to arbitrate "any dispute"
"plainly covers . . . fraudulent inducement and declaratory judgment claims"); *cf. Long v. Amway
Corp.*, 306 F. Supp. 3d 601, 610 (S.D.N.Y. 2018) (arbitration agreement providing for arbitration
of "any dispute" was "classically broad").

unconscionability of agreement, but considering plaintiffs' argument that they never assented to terms of use in agreement).  But this challenge is easily put aside.  Contrary to Inventory Generation's portrayal, the arbitration and forum selection provisions, far from conflicting, are complementary.

The arbitration provisions are broad and unambiguous.  They require that, at the election of any party, "any *action* or *dispute* relating to" the Agreement be resolved in arbitration.  Agreement ¶¶ 48, G15 (emphasis added).  The forum selection provisions, meanwhile, apply only to "[a]ny *litigation* relating to" the Agreement.  *Id.* ¶¶ 40, G7 (emphasis added); *see also id.* ¶¶ 46 (distinguishing between "litigation or arbitration"), G13 (same), G9 (same).  The natural reading of these provisions, together, is that the Agreement permit a party to initiate a litigation relating to the Agreement, but subject to either party's contractual right to elect arbitration, as the PCF defendants have here.  The provisions also leave room for litigation as to court proceedings ancillary to arbitration—such as to compel arbitration if such is resisted, as here, or to confirm or vacate an arbitral award.  For litigation within those parameters, the Agreement's forum selection provisions govern.

These clauses do not, however, conflict with the central command of the arbitration provisions, which require, at the election of any party, that any dispute relating to the Agreement be resolved by arbitration.  That the forum selection provisions specifically authorize PCF to bring "actions or proceedings to enforce a[n] . . . arbitration award against any Merchant or Guarantor . . . in any other court of competent jurisdiction" reinforces the reading of "litigation" to encompass post-arbitration motions to confirm (or vacate) an arbitral award.  *See* Agreement ¶¶ 40, G7.

Courts in this Circuit have found similar arbitration and forum selection provisions "plainly complementary." *Schwartz v. Sterling Ent. Enters., LLC & SportsNet N.Y.*, No. 21 Civ. 1084 (PAC), 2021 WL 4321106, at *5–6 (S.D.N.Y. Sept. 23, 2021) (reading arbitration and forum selection clause as complementary where arbitration clause excluded certain categories of disputes, and forum selection clause covered "any litigation concerning th[e] Agreement"); *see, e.g.*, *Offshore Expl. & Prod., LLC v. Morgan Stanley Priv. Bank, N.A.*, 626 F. App'x 303, 306–07 (2d Cir. 2015) (forum selection clause in later agreements was permissive and "simply waived objection to jurisdiction in New York" where it provided that the parties "consent[ed] to the jurisdiction of the courts located in the State of New York," and "should be read as complementary to the agreement to arbitration" (quotation marks and alterations omitted)); *Lahoud v. Document Techs. LLC*, No. 17 Civ. 1211 (PKC), 2017 WL 5466704, at *5–6 (S.D.N.Y. Nov. 14, 2017) (reading arbitration and forum selection clause as complementary because arbitration clause excluded certain categories of disputes and forum selection clause governed where excluded disputes were subject to litigation); *cf. Bank Julius*, 424 F.3d at 285 (considering provisions in consecutive agreements: "[Forum selection clause] may be read, consistent with the Arbitration Agreement, in such a way that the [parties] are required to arbitrate their disputes, but that to the extent the [party] files a suit in court in New York—for example, to enforce an arbitral award, or to challenge the validity or application of the arbitration agreement—[the opposing party] will not challenge either jurisdiction or venue").

Because the provisions are readily reconciled, *Applied Energetics, Inc. v. NewOak Cap. Markets, LLC*, 645 F.3d 522, 525 (2d Cir. 2011), on which Inventory Generation relies, is easily distinguished. The forum selection clause there was all-inclusive such that it stood to preclude or supersede the arbitration clause in all its applications. Not so here. *See Schwartz*, 2021 WL

4321106, at *6 (determining provisions complementary where the forum selection clause was not all-inclusive); *cf. Aviation Fin. Co. v. Chaput*, No. 14 Civ. 8313 (CM), 2015 WL 13203653, at *10–11 (S.D.N.Y. Mar. 12, 2015) (same, where forum selection clause stated that parties "submit[ted] to the exclusive jurisdiction of the courts of the [sic] New York, NY"). *Contra Applied Energetics*, 645 F.3d at 525 (no agreement to arbitration where "[b]oth provisions are all-inclusive, both are mandatory, and neither admits the possibility of the other"); *Flexport, Inc. v. W. Glob. Airlines*, No. 19 Civ. 6383 (PGG), 2020 WL 7028908, at *5 (S.D.N.Y. Nov. 30, 2020) (contradictory where court and arbitration provisions both referred to "any dispute" and "all disputes" and were "all-inclusive").

The Court accordingly grants the PCF defendants' motion to compel arbitration.

## III.   The PCF Defendants' Costs and Attorneys' Fees

The PCF defendants seek costs and attorneys' fees associated with moving to compel. *See* Mem. at 3.  In its opposition, Inventory Generation did not address this application.

Attorneys' fees and costs are available when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338*, 118 F.3d 892, 898 (2d Cir. 1997).

The Court declines to award such fees and costs.  The PCF defendants have made only a cursory request for such relief.  *See* Mem. at 3; *see, e.g.*, *Sinavsky v. NBCUniversal Media, LLC*, No. 20 Civ. 9175 (JPC), 2021 WL 4151013, at *7 (S.D.N.Y. Sept. 13, 2021) (denying fees and costs and noting that defendants had made only a cursory request); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 340 (S.D.N.Y. 2014) (same).  And courts within this Circuit "regularly deny fees where the plaintiff has made at least colorable, even if ultimately unsuccessful, arguments." *See, e.g.*, *Sinavsky*, 2021 WL 4151013, at *6 (collecting cases).  Such is the case here.  Although ultimately unpersuasive, Inventory Generation's grounds for disputing the arbitrability of its

claims were not so baseless or entirely meritless as to warrant such a sanction. *See, e.g.*, *id.* at 6–7 (granting motion to compel but denying attorneys' fees and costs); *Philippe v. Red Lobster Restaurants LLC*, No. 15 Civ. 2080 (VEC), 2015 WL 4617247, at *4–5 (S.D.N.Y. Aug. 3, 2015) (same); *Marciano*, 14 F. Supp. 3d at 340 (same).

The Court accordingly declines to award fees and costs associated with the motion to compel.

## IV.    Scope of the Stay Pending Arbitration

Having granted the motion to compel arbitration, it is appropriate that this litigation be stayed, during the pendency of the arbitration, as to Inventory Generation's claims that either (1) solely implicate the PCF defendants or (2) allege joint conduct between the PCF defendants and other defendants. The Second Circuit has held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). Such a stay will expedite this case by enabling prompt arbitral resolution of Inventory Generation's claims involving the PCF defendants and deferring any appellate review until after the arbitration has concluded. *See, e.g.*, *Shubin v. Slate Digit., Inc.*, No. 21 Civ. 9464 (PAE), 2022 WL 168152, at *6 (S.D.N.Y. Jan. 19, 2022).

For avoidance of doubt, the Court clarifies the scope of the stay as follows.

Inventory Generation's Complaint here brings distinct claims against each of five sets of defendants. It alleges that each of the five MCA agreements was the product of a distinct RICO enterprise. *See, e.g.*, Compl. ¶¶ 164–78, 188. And it alleges identical, but non-coordinated, conduct by each of the five RICO enterprises. *See id.* ¶¶ 153–207. It is therefore easy to disaggregate the claims that must be stayed in favor of arbitration from those that are to proceed before this Court. The Court stays Inventory Generation's RICO claim under 18 U.S.C. § 1962,

and its claim of conspiracy to commit the same under 18 U.S.C. 1962(d), but only as to the PCF defendants.  The Court also stays, as to the PCF defendants only, Inventory Generation's request for declaratory relief, *id.* ¶ 208–11, and claims of fraud, *id.* ¶¶ 212–23, and, in the alternative, breach of contract, *id.* ¶¶ 224–28.

The Court does not stay any claims as to any other defendants remaining in this case, to the extent such claims have not previously been dismissed.  Those claims—including those under 42 U.S.C. § 1983, which did not name any of the PCF defendants—are to proceed in this Court until their resolution or dismissal.  *Id.* ¶¶ 229–47.[9]

## CONCLUSION

For the foregoing reasons, the Court grants the PCF defendants' motion to compel arbitration and denies the PCF defendants' motion for costs and attorneys' fees.  The Court stays this action as to the PCF defendants to the extent described above pending the completion of the arbitration, but does not stay any claims against any other defendants.

Inventory Generation and the PCF defendants are directed to submit a joint status letter to the Court every 90 days, measured from the date of this decision, advising the Court of the status of the arbitration proceedings involving the PCF defendants.

The Clerk of the Court is respectfully directed to terminate the motion at docket 26.

---

[9] On March 21, 2023, plaintiffs represented to the Court that they have reached an agreement that would settle all claims against the MCA Receivables defendants.  *See* Dkt. 42-1.  The Court will issue an order as those claims today.  Assuming that this development results in the dismissal of the claims against those defendants, that would leave the PCF defendants as the only remaining defendants in this action.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 23, 2023
New York, New York